15114

FALLAW v. OSWALD, SHERIFF, *ET AL.*

(9 S. E. (2d), 793)

388

*Messrs. Hall & Hall,* for appellant,

*Messrs. Williams & Busbee,* for respondents,

July 1, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The appellant, Mrs. Silla Fallaw, filed a suit to enjoin a sale of land under an execution against her husband. W. H. Fallaw, claiming that an undivided two-thirds interest in the land was purchased with her separate funds and under circumstances which created a resulting trust in her favor as against her husband. The judgment creditor, Jos. L. Nettles, as Receiver of stockholders' liability of Peoples State Bank of South Carolina, and the levying officer, Sheriff Oswald of Lexington County, were made parties defendant.

The controversy in the case at bar arose in this way: W. H. Fallaw, a resident of Lexington County, was a stockholder of Peoples State Bank, which became insolvent, and the defendant, Jos. L. Nettles, is the Receiver of the stockholders' liability of this bank. A judgment against W. H.

Fallaw on account of such liability in the sum of $904.00 was duly entered in the office of the Clerk of Court for Lexington County on or about April 20, 1937. Thereafter, Mr. Fallaw claimed his homestead, which was duly set apart to him by the defendant, H. C. Oswald, as sheriff of Lexington County. After this was done, the sheriff levied upon two small tracts of land, one containing 31.88 acres, and the other containing 29.25 acres, more or less, each of which had been conveyed to Mr. Fallaw at a judicial sale by two separate deeds, both dated March 7, 1916, and duly recorded in Lexington County on March 29, 1916. Some time after the entry of the judgment against Mr. Fallaw, to wit, on November 10, 1938, he conveyed the two tracts of land in question to his wife, the plaintiff, the consideration recited in the deed being the sum of $500.00.

Mrs. Fallaw alleges in her complaint that at the time of the execution and delivery of the deeds conveying these lands to W. H. Fallaw, the total purchase price paid therefor was $760.00, and that she did then and there furnish two-thirds of the purchase money, and that by reason thereof a resulting trust arose in her favor by operation of law to the extent of an undivided two-thirds interest in the said land. She further alleges that upon the execution to her of the deed by W. H. Fallaw, dated November 10, 1938, she acquired his undivided one-third interest, and thus became the owner in fee of the entire premises. It· is also alleged, upon information and belief, that although the deeds describe the lands as being situate in Lexington County alone, only about one-third thereof lies in that county—one-third lying in Aiken County, and one-third lying in Saluda County; and that the judgment of the judgment creditor has never been transcribed either to Aiken County or Saluda County.

The motion of the plaintiff for an interlocutory injunction was based upon her verified complaint and affidavit attached thereto. The defendants demurred to the complaint

and also filed an answer and return, whereupon the plaintiff demurred to the answer and return of the defendants, and also filed a reply.

The Circuit Court held, among other things, that the plaintiff was estopped from asserting her claim under the alleged resulting trust as being superior to the judgment lien of the respondent Receiver. This holding was based upon the fact that in the deed from Mr. Fallaw to his wife, the plaintiff, no mention was made of any resulting trust, and that this circumstance, considered along with the other facts alleged in the complaint, supported the defense of estoppel.

To sustain the decree of the Circuit Court respondent relies strongly upon the following excerpt quoted therein, and taken from the case of *J. K. Orr Shoe Co. v. Lee,* 159 Ga., 523, 126 S. E., 292: "As the creditor was seeking to enforce a legal right arising from his judgment lien on this land while the title was in the husband, the burden of showing want of notice of the wife's secret equity was not on the creditor; and if such lien of the creditor could be defeated by the fact that he had notice of the wife's secret equity, the burden was on her to show that the creditor had such notice."

We think, however, that the principle announced in the *Orr Shoe Company case* has been misunderstood. Immediately preceding the portion of the opinion which we have just set out, the Court said this: "If the legal title to land be in the husband and he hold the possession thereof under such title, and the title and possession so remain until one who has *given credit* on the faith that the property was the husband's without any notice of the wife's equity, reduces his debt to judgment, the lien of such judgment will bind the land, and will be enforced against a secret equity of the wife, resulting from the fact that her money paid for the land." (Emphasis added.)

It will be noted that the decision of the question in the *Orr Shoe Company case* turned wholly upon whether the

creditor extended credit to the husband on the faith of the legal title. This is clearly shown in the last paragraph of the syllabus, in which the Court announced this rule: "If the wife's money or property was used to pay for this land to which title was taken in the name of her husband, and if credit was *not* extended to the husband on the faith of his ownership of this land, or if the wife could show that the creditor had notice of her secret equity, then the creditor could not subject this land to the lien of his judgment."

The doctrine announced in *J. K. Orr Shoe Co. v. Lee, supra,* has been reaffirmed in *Wright v. Pearson,* 182 Ga., 366, 185 S. E., 336, and *Parker v. Harling,* 187 Ga., 419, 200 S. E., 800, and is in accord with the great weight of authority.

It is generally agreed that a married woman who permits the legal title to real estate to stand in the name of her husband is estopped, under certain circumstances, from asserting an equitable title or interest to and in such property as against creditors of her husband, who in extending credit to the husband relied on his legal title and had no knowledge or were not chargeable with notice of the equitable right and interest of the wife in such real estate. 26 Am. Jur., Sec. 115, page 740, Annotations, 76 A. L. R., 1501, 2 L. R. A., 348, 30 L. R. A. (N. S.), 3, 46 L. R. A. (N. S.), 1097, 57 Am. St. Rep., 175, Ann. Cas., 1914-C, 1066.

Applying this principle of the law to the case at bar, no basis for estoppel is shown. Nowhere in the pleadings does it appear that the Peoples State Bank, whose stock Mr. Fallaw bought, and presumably paid for in cash, extended him credit in reliance upon the fact that he owned the lands in question. On the contrary, it is shown that the judgment obtained against Mr. Fallaw arose solely from his statutory liability of the stockholders for double the value of his stock.

Both the appellant and the respondents rely upon the case of *Ex parte Trenholm,* 19 S. C., 126. In that case it was held: "The moment the legal title became vested in George A. Trenholm, as it did so soon as the deed was executed, the property became subject to the lien of Hampton's judgment, unless there was then some existing equity in some one else superior to such lien."

The record in this case shows that at the time the respondent Receiver's judgment was entered against W. H. Fallaw, there was then an existing beneficial equity in the property in the appellant. And in our opinion, under the facts alleged, this equity if established was superior to the judgment lien, and comes within the principle announced in the *Trenholm case.* It is true that in the *Trenholm case* judgment had been entered before the property was acquired by the judgment debtor, and in the case at bar judgment was entered after the property was conveyed to the judgment debtor. But we are unable to perceive why this should change the legal status of the parties.

It is well settled that the lien of a judgment attaches only to such interest as the judgment debtor actually has in the proprety levied upon, except where the true owner is estopped from asserting title. As already pointed out, the appellant is not estopped to assert title under the facts alleged to exist in this case, because it is not shown that the Peoples State Bank extended credit on the faith of the apparent title of the husband, or that it ever knew that the record title was in the husband. Annotation, 30 L. R. A. (N. S.), 11.

Estoppel arises when a person by his conduct or language, or silence amounting to representation, or a concealment of material facts, induces another to change his position to his hurt. *Cannon v. Baker,* 97 S. C., 116, 81 S. E., 478; *Thompson v. Hudgens,* 161 S. C., 450, 159 S. E., 807. The pleadings do not show that any hurtful

change of position was occasioned by the conduct of appellant.

Respondents in their answer and return charge the appellant with laches in allowing the title to her proportionate interest in the property to remain in her husband and trustee from 1916, when title thereto was recorded in the name of her husband, to 1938, when he conveyed the property to her.

It must be conceded that Mrs. Fallow, by permitting the legal title to the land to remain in her husband, represented to the public that he was the owner of it. But the judgment creditor was not prejudiced by this fact. One of the constituents of laches is injury or prejudice to third persons in the event relief is granted to the complainant.

The question as to whether the complainant's suit is to be deemed barred by reason of laches is not to be determined by reference to any particular period as compared to the time during which she delayed assertion of her claim. The determination of the question as to laches *vel non* proceeds in the light of the circumstances of each case. Lapse of time is only one, and not ordinarily the controlling or most important one, of the elements to be considered in applying the rule of laches as a defense in equity. *Thomas v. MacNeill,* 138 S. C., 86, 135 S. E., 643, 19 Am. Juris., Sec. 499, pages 344-345, and Sec. 509, page 353.

The Courts will give relief if the rights of creditors extending credit were involved or innocent purchasers affected, or if the granting of relief would operate unjustly, but here the pleadings show no change of conditions connected with the delay. Nor has the essential character of the resulting trust been affected by the lapse of time.

In our opinion, the judgment below must be reversed insofar as the issues passed upon are concerned, but affirmed in all other respects.

Judgment reversed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and STUKES concur.